976 P.2d 410

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Malakai MAUMALANGA,
Defendant–Appellant.**

**No. 20146.**

Intermediate Court of Appeals of Hawai'i.

Aug. 11, 1998.

---

Rose Anne Fletcher, Deputy Public Defender, on the brief, for defendant-appellant.

Mark Yuen, Deputy Prosecuting Attorney, City and County of Honolulu, on the brief, for plaintiff-appellee.

WATANABE, ACOBA, and KIRIMITSU, JJ.

Opinion of the Court by KIRIMITSU, J.

## I. INTRODUCTION

Defendant–Appellant Malakai Maumalanga (Defendant) appeals the First Circuit Court's June 28, 1996 Amended Judgment of Conviction and Probation Sentence.[1] For the reasons set forth below, we affirm.

---

1. Defendant–Appellant Malakai Maumalanga's (Defendant) Notice of Appeal indicates that he is appealing the May 28, 1996 Judgment of Conviction and Probation Sentence. However, an Amended Judgment of Conviction and Probation Sentence was filed on June 28, 1996, and therefore we will address Maumalanga's appeal as though he were appealing the June 28, 1996 amended judgment.

## II. BACKGROUND

On June 8, 1996, Defendant had been working at EM Tours as a porter. Because an alleged anonymous phone call was received by the tour company that it would be robbed that evening, Defendant brought two guns to work with him that day. Apparently, no robbery occurred.

While at work on June 8, 1996, Defendant heard of a possible drive-by shooting at Kanoa Park. Defendant then left work at about 10:00 p.m. to personally drive home two of his friends who were at the park during the drive-by shooting. After dropping off his friends, Defendant went to a gas station to put gas in his car. While at the gas station, Defendant coincidentally saw boys who he suspected were involved in the drive-by shooting.

Defendant alleged that one of the boys at the gas station pulled out a gun and aimed it at Defendant. Because Defendant unsuccessfully attempted to drive away, Defendant allegedly had no choice but to grab his gun and aim it at the boys. Defendant then shot off around four to five rounds from his gun.

Defendant was subsequently arrested and charged with seven counts: Attempted Murder in the First Degree (Count I); Attempted Murder in the Second Degree (Counts II and III); Place to Keep Loaded Firearm (Count IV); [2] and Terroristic Threatening in the First Degree (Counts V, VI and VII).

The trial court subsequently granted, in part, Defendant's motion for directed verdict and thereby acquitted Defendant of Counts VI and VII.

At trial, Defendant specifically raised a choice of evils defense to the charge of Place to Keep Loaded Firearm,[3] Hawai'i Revised Statutes (HRS) §§ 134–6(c) and (e) (1993).[4] Over Defendant's objection, the court in-

2. The Place to Keep Loaded Firearm charge arose out of the following facts: (1) that Defendant carried a loaded pistol; (2) that Defendant had no license to do so; and (3) that Defendant was carrying it in his waistband while in the car at the gas station. *See* Hawai'i Revised Statutes (HRS) § 134–6(c) (1993), *infra* n.4.

3. The relevant portion of defense counsel's closing argument is as follows:

Let's talk about, I believe, it's Count 4, and that's the position of the gun.

Actually, ... [h]e is charged with not keeping it in the right place.

Now the Defense to this charge, and this is what we are asserting this choice of evils.

Now [Defendant] had to have the gun, he had to have those guns for a reason. Choice of evils....

... [The police] don't protect [Defendant]. [Defendant] calls them, and what happens, they end up harassing him because people don't want to let go of their own beliefs that [Defendant] is a gang member. Either the Pinoi–Boys either, neither the BBI or the police; so [Defendant] has no choice, he doesn't have the police to protect him. He knows the Pinoi–Boys are going after him, so he buys guns to protect himself and protect his family.

He doesn't have a choice but to have those guns in his possession; but he is not charged with possession. So you have to remember that he is not charged with possession, but he is charged with place to keep; and the only reason why he takes those guns out of that house and take it down to his work place is because [his co-worker] calls him up and says,

"We are going to get robbed. Can you bring some protection? Help us out."

4. HRS §§ 134–6(c) and (e) (1993) state:

**Carrying or use of firearm in the commission of a separate felony; place to keep firearms; loaded firearms; penalty.**

. . . .

(c) Except as provided in sections 134–5 and 134–9, all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be lawful to carry unloaded firearms or ammunition or both in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following: a place of repair; a target range; a licensed dealer's place of business; an organized, scheduled firearms show or exhibit; a place of formal hunter or firearm use training or instruction; or a police station. "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

. . . .

(e) Any person violating subsection (a) or (b) shall be guilty of a class A felony. Any person violating this section by carrying or possessing a loaded firearm or by carrying or possessing a loaded or unloaded pistol or revolver without a license issued as provided in section 134–9 shall be guilty of a class B felony. Any person violating this section by carrying or possessing an unloaded firearm, other than a pistol or revolver, shall be guilty of a class C felony.

structed the jury on the choice of evils defense as follows:

> It is a defense to the offense charged that the defendant's conduct was legally justified. The law recognizes the "choice of evils" defense, also referred to as the "necessity" defense.
>
> The "choice of evils" defense justifies the defendant's conduct if the defendant reasonably believed that compliance with the law would have resulted in greater harm to himself or another than the harm sought to be prevented by the law defining the offense charged.
>
> In order for the "choice of evils" defense to apply, four conditions must be satisfied. *First, the defendant must have reasonably believed that there was no legal alternative available to him. Second, the defendant must have reasonably believed that the harm sought to be prevented was imminent or immediate. Third, the defendant's conduct must have been reasonably designed to actually prevent the threat of greater harm. Fourth, the harm sought to be avoided must have been greater than the harm sought to be prevented by the law defining the offense charged.*
>
> Accordingly, if the prosecution has not proved beyond a reasonable doubt that the defendant's conduct was not legally justified by the "choice of evils" defense, then you must find the defendant not guilty of Count IV: Place to Keep Loaded Firearm. If the prosecution has done so, then you

must find that the "choice of evils" defense does not apply.[5]

(Patterned Hawai'i Jury Instruction 7.12) (emphasis added).

Subsequently, the jury acquitted Defendant of Counts I, II, III, and V. The jury found Defendant guilty of Count IV—Place to Keep Loaded Firearm.

An Amended Judgment of Conviction and Probation Sentence was entered on June 28, 1996.[6] Defendant's Notice of Appeal was untimely, having been filed on September 26, 1996.

## III. *DISCUSSION*

### A. *Jurisdiction*

■ Preliminarily, there is a question of jurisdiction in this case because Defendant filed his notice of appeal fifty-nine days late, or ninety days after the trial court entered its judgment. Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b), a criminal defendant must file a notice of appeal "within 30 days after the entry of the judgment or order appealed from." However, "[t]his court and the Hawai'i Supreme Court have seen fit in criminal cases to relax the deadline for filing a notice of appeal where justice so warrants." *State v. Ahlo*, 79 Hawai'i 385, 392, 903 P.2d 690, 697 (App. 1995) (quotation marks and citations omitted). In light of the above holdings, and based on a review of the circumstances in

---

5. Defendant's proposed jury instruction stated as follows:
    > It is a defense to the offense in Count IV of the complaint, Place to Keep Loaded Firearm, that the [D]efendant's conduct was legally justified. The law recognized the "choice of evils" defense, also referred to as the "necessity" defense.
    > The "choice of evils" defense justifies the [D]efendant's conduct if the defendant reasonably believed that compliance with the law would have resulted in greater harm to himself or another than the harm sought to be prevented by the law defining the offense charged.
    > The "choice of evils" defense is not applicable if the prosecution has proved beyond a reasonable doubt that:
    > (1) [Defendant] did not reasonably believe that his conduct was necessary in order to avoid an imminent harm or evil to himself or another; or

> (2) the harm or evil sought to be avoided by [Defendant's] conduct was not greater than the harm sought to be prevented by this law defining the offense charged.
    > Accordingly, if the prosecution has not proven beyond a reasonable doubt that the defendant's conduct was not legally justified by the "choice of evils" defense, then you must find the defendant not guilty of Place to Keep Loaded Firearm, in Count IV. If the prosecution has done so, then [you] must find that the "choice of evils" defense does not apply.

6. The original judgment was filed on March 28, 1996, but it failed to indicate the disposition of Count IV—Place to Keep Loaded Firearm. Consequently, an amended judgment was filed on June 28, 1996 and indicated that Defendant was found guilty of Count IV—Place to Keep Loaded Firearm.

this case, the interests of justice require us to hold that Defendant's failure to comply with HRAP Rule 4(b) does not preclude his right to appeal. *See State v. Knight,* 80 Hawai'i 318, 323, 909 P.2d 1133, 1139 (1996) (extending jurisdiction despite failure to comply with HRAP Rule 4(b)); *Ahlo,* 79 Hawai'i at 392, 903 P.2d at 697 (doing the same).

## B. *Jury Instructions*

Defendant appeals only his conviction of Place to Keep Loaded Firearm. In that regard, Defendant only challenges the jury's instruction regarding his choice of evils justification defense.

### 1. *Standard of review.*

"In reviewing jury instructions, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Maelega,* 80 Hawai'i 172, 176, 907 P.2d 758, 762 (1995) (quotation marks and citations omitted).

7. HRS § 703–302 (1993) states in its entirety:
    **Choice of evils.** (1) Conduct which the actor believes to be necessary to avoid an imminent harm or evil to the actor or to another is justifiable provided that:
    (a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and
    (b) Neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and
    (c) A legislative purpose to exclude the justification claimed does not otherwise plainly appear.
    (2) When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for the actor's conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.
    (3) In a prosecution for escape under section 710–1020 or 710–1021, the defense available under this section is limited to an affirmative defense consisting of the following elements:
    (a) The actor receives a threat, express or implied, of death, substantial bodily injury, or forcible sexual attack;
    (b) Complaint to the proper prison authorities is either impossible under the circumstances or there exists a history of futile complaints;

### 2. *The current status of the choice of evils defense in Hawai'i.*

HRS § 703–302(1)(a) (1993) provides, in relevant part, as follows:

**Choice of evils.** (1) Conduct which the actor believes to be necessary to avoid an imminent harm or evil to the actor or to another is justifiable provided that:

(a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged[.]

HRS § 703–302(1)(a).[7] HRS § 703–300 (1993) defines "believes" to mean "reasonably believes."

Because the Hawai'i Penal Code (the Code) is derived from the Model Penal Code (MPC), Hse. Stand. Comm. Rep. No. 227, in 1971 House Journal, at 784, HRS § 703–302 is nearly identical to Section 3.02 of the MPC.[8]

    (c) Under the circumstances there is no time or opportunity to resort to the courts;
    (d) No force or violence is used against prison personnel or other innocent persons; and
    (e) The actor promptly reports to the proper authorities when the actor has attained a position of safety from the immediate threat.
    Subsections (1)(b) and (c) are not applicable in this case because neither party asserts, and the record does not indicate, that either section applies. Subsection (2) does not apply because neither party asserts, and the record does not indicate, that Defendant was reckless or negligent in bringing about the situation. Subsection (3) does not apply because this was not a prosecution for escape.

8. Section 3.02 of the Model Penal Code (MPC) provides:
    **Section 3.02. Justification Generally: Choice of Evils.**
    (1) Conduct that the actor believes to be necessary to avoid a harm or evil to himself [or herself] or to another is justifiable, provided that:
    (a) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and
    (b) neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and
    (c) a legislative purpose to exclude the justification claimed does not otherwise plainly appear.

Prior to the enactment of HRS § 703–302(1)(a), the State of Hawai'i (the State) followed the common law defense of "necessity" or choice of evils. *State v. Marley*, 54 Haw. 450, 471–72, 509 P.2d 1095, 1109 (1973).[9] Under the common law approach, the choice of evils defense is not applicable in three situations (the *Marley* test):

(1) Where there is a third alternative available to defendants that does not involve violation of the law, defendants are not justified in violating the law. . . .

(2) A closely related required element is that the harm to be prevented be imminent. . . .

(3) Thirdly, and most importantly, even assuming *arguendo* that alternative courses of action were "unavailable" . . . defendants remain unentitled to the defense of "necessity" because their actions were not reasonably designed to actually prevent the threatened greater harm.

*Id.* at 472, 509 P.2d at 1109 (citations omitted).

Following the enactment of HRS § 703–302, this court in *State v. Kealoha*, 9 Haw. App. 115, 826 P.2d 884 (1992) believed that "the *Marley* rationale [was] applicable in the construction of HRS § 703–302(1), (2)." *Id.* at 118, 826 P.2d at 886. Thus, we essentially adopted the three-part *Marley* test for purposes of construing HRS § 703–302(1), (2). *Id.*

Subsequently, in 1996, we reaffirmed our decision in *Kealoha* and surmised that, pursuant to HRS § 703–302(1)(a),

the necessity or choice of evils justification defense is not applicable when one or both of the following requirements is not satisfied: (1) the defendant reasonably believed that it was necessary to commit the crime to avoid an imminent harm or evil to himself or to others; or (2) the harm or evil

sought to be avoided was greater than the harm or evil generated by the crime committed.

*State v. DeCastro*, 81 Hawai'i 147, 153, 913 P.2d 558, 564 (App.1996) (Acoba, J., concurring).

We further reiterated our holding in *Kealoha* that,

with respect to requirement (1) above, a person does not reasonably believe that it is necessary to commit a crime to avoid an imminent harm or evil to himself or others when one or more of the following is a fact:

(a) A third alternative that did not involve the commission of a crime was reasonably available to the person;

(b) The crime committed was not reasonably designed to actually avoid the harm or evil sought to be avoided; or

(c) The harm or evil sought to be avoided was not imminent when the person committed the crime.

*Id.* at 153–54, 913 P.2d at 564–65.

However, in *DeCastro*, Judge Acoba disagreed with the application of the three-part *Marley* test because in his opinion, "the common law requirements set forth in *Kealoha* [and *Marley*] conflict with the express language of HRS § 703–302." *Id.* at 155, 913 P.2d at 566. Instead, pursuant to the express language of HRS § 703–302(1)(a), Judge Acoba reasoned that

the justification defense is satisfied when the following factors are established: the defendant (1) reasonably believes (2) the conduct is necessary (3) to avoid harm or evil to the actor or another which is (4) imminent, and (5) the harm or evil sought to be avoided is greater than the violative conduct.

*Id.*

Defendant now asks us to revisit our holdings in *Kealoha* and *DeCastro* on the basis

(2) When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for his [or her] conduct, the justification afforded by this Section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

MPC § 3.02 (Official Draft 1962) (asterisk omitted). The only substantial difference between the

Hawai'i Penal Code's (the Code) version of the choice of evils defense and the MPC's version is that the Code requires an element of imminency.

9. *State v. Marley*, 54 Haw. 450, 509 P.2d 1095 (1973) was decided shortly after the enactment of HRS § 703–302. However, the facts of the case occurred prior to the enactment, thus the *Marley* court made no mention of HRS § 703–302.

that these cases improperly expand or add to the requirements set forth by the legislature in HRS § 703–302(1)(a).

### 3. *We reaffirm our holdings in Kealoha and DeCastro with clarification.*

Our decisions in *Kealoha* and *DeCastro* are consistent with the general principles of statutory construction as well as the Code's rule of construction. Therefore, we reject any argument that *Kealoha* and *DeCastro* go beyond the scope of permissible construction.

#### a.

HRS § 701–102(2) (1993) provides that "[t]he provisions of this Code govern the construction of and punishment for any offense set forth herein committed after the effective date, as well as the construction and application of any defense to a prosecution for such an offense."

HRS § 701–104 (1993) further provides as follows:

> **Principles of construction.** The provisions of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, *in order to promote justice and effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of the words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.*

(Emphasis added.) Thus, HRS § 701–104, "read in conjunction with § 701–103 [ (purposes of this Code) ], is intended to assure that this Code will be construed by the courts in such a way as to effectuate the declared purposes of the law." Commentary to HRS § 701–104.

We are also guided by the following principles of statutory construction:

> The starting point in statutory construction is to determine the legislative intent from the language of the statute itself. It is a cardinal rule of statutory construction that courts are bound to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void or insignificant if a construction can be legitimately found which

will give force to and preserve all words of the statute. Penal statutes are to be strictly construed. *However, the strict construction rule does not permit the court to ignore legislative intent, nor require the court to reject that construction that best harmonizes with the design of the statute or the end sought to be achieved.*

*State v. Mitsuda,* 86 Hawai'i 37, 40–41, 947 P.2d 349, 352–53 (1997) (emphasis added) (citation omitted).

#### b.

Based on the aforementioned principles, we make the following observations. In light of our holdings in *Kealoha* and *DeCastro*, the law in Hawai'i on a choice of evils justification defense is still governed by HRS § 703–302(1)(a): (1) the defendant must reasonably believe that it was necessary to commit the crime to avoid an imminent harm or evil to himself or others; *and* (2) the harm or evil sought to be avoided was greater than the harm or evil generated by the crime committed. HRS § 703–302(1)(a); *see also DeCastro,* 81 Hawai'i at 153, 913 P.2d at 564.

The language of HRS § 703–302 was intended to be general and objective in order for a jury or factfinder to be the ultimate decision-maker for determining whether a choice of evils defense is justified. The commentary to § 703–302 states, in relevant part:

> The whole matter, with all of its ramifications is to be weighed by the court and the jury in the same manner as in any criminal proceeding. *If the defendant's conduct was not necessary, if one evil was not greater than the other, if the defendant exceeded the reasonable bounds of intelligence and morality, the defendant may be convicted for the defendant's conduct notwithstanding the defendant's attempts to justify the defendant's actions.*
>
> *Finally, many commentators have had difficulty with the concept of necessity because of the possibility of unforeseeable changes in the perilous situation.* For instance, if a number of passengers are thrown overboard from a ship to save a much larger number of persons, there is really no way for the actors to foresee the

exact moment when a rescue ship may arrive. There is always the chance that help will arrive in time to make the emergency action unnecessary. Such objections, however, fail to take account of the fact that other defenses which are predicated on a threat to person or property can take account only of the probability of harm. One can never guarantee that the uplifted knife will be plunged into the victim. If necessity is not admitted where there is a high degree of probability of disastrous consequences if action is not taken, then it can never be admitted. A person faced with such seeming necessity is and will remain in a personal moral quandary because of the person's uncertainty. Our only point is that the threat of criminal punishment is unneeded here.

(Emphases added) (internal quotation marks and footnote omitted).

■ Our holdings in *Kealoha* and *DeCastro* recognize the difficulty with the concept of when an actor reasonably believes his or her conduct to be "necessary to avoid an imminent harm or evil to the actor or to another." Thus, our case law simply provides *considerations* for interpreting this first requirement of the statute; they do not create elements which add to the requirements of HRS § 703–302(1)(a). The considerations for the first requirement of the statute are as follows: (1) whether a *third alternative,* that did not involve the commission of a crime, was reasonably available to the defendant; (2) whether the crime committed was not *reasonably designed* to actually avoid the harm or evil sought to be avoided; and (3) whether the harm or evil sought to be avoided was *imminent* when the person committed the crime. *DeCastro,* 81 Hawai'i at 153–54, 913 P.2d at 564–65.

As to consideration (1), although the statute does not include language about a third legal alternative, it also does not add to the statute because it is another way of defining whether a defendant reasonably believed it was *necessary* to commit a crime in order to avoid harm to himself or others. A choice of evils defense is exactly what it says—a defendant must be in a position of choosing between two evils. *See United States v.*

*Bailey,* 444 U.S. 394, 409–10, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) ("While the defense of duress covered the situation where the coercion had its source in the actions of other human beings, the defense of necessity, or choice of evils, traditionally covered the situation where physical forces beyond the actor's control rendered illegal conduct the lesser of two evils.") A natural and common definition to the term "necessary," in the context of a choice of evils defense, is that "if there was a reasonable, legal alternative to violating the law, a chance both to refuse to do the criminal act and also to avoid the threatened harm," then there is no necessity. *Id.* at 410, 100 S.Ct. 624 (citation and quotation marks omitted). Thus, by having a jury consider the presence of a third legal alternative does not add to the express language of the statute; instead it helps define and construe whether an action is necessary. *See generally* MPC § 3.02 at 10 (Tentative Draft No. 8, 1958) ("Questions of immediacy and of alternatives have bearing, of course, on the genuineness of a belief in necessity, as well as on the actor's recklessness or negligence when either is material.").

As to consideration (2), HRS § 703–302(1)(a) mentions nothing about the defendant's actions being "reasonably designed" to actually avoid a harm or evil. Nevertheless, "reasonably designed" goes to the question of degree (i.e., the nature and degree of the crime committed by the defendant in relation to the nature and degree of the harm or evil sought to be prevented). This consideration does not add to the statute because an express requirement of § 703–302(1)(a) is that "[t]he harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged[.]"

Finally, consideration (3) articulates the element of imminency and does not add anything to the requirements of HRS § 703–302(1)(a) because the statute specifically requires that the harm or evil perceived by the defendant be imminent.

Even the drafters of the MPC recognized these aforementioned considerations:

[T]he formulation makes the actor's belief in the necessity sufficient (assuming a

valid choice of evils) unless the crime can be committed recklessly or negligently, in which case recklessness or negligence as to the necessity suffices. *Questions of immediacy and of alternatives have bearing, of course, on the genuineness of a belief in necessity, as well as on the actor's recklessness or negligence when either is material.* Not even actual necessity suffices unless the actor acted on belief in its existence; under the formulation in the draft, one cannot act by accident from necessity. MPC § 3.02 at 10 (Tentative Draft No. 8, 1958) (Tentative Draft No. 8 remained unchanged in its final draft) (cited in MPC part I·Commentaries, Vol. 2, at 9 (Off. Draft and Rev. Comm.1962)).

To be sure, the "common law" considerations of *Kealoha* and *DeCastro* do not make it more difficult for a defendant to prevail on a choice of evils defense. The considerations are just that—considerations. They do not add additional elements to a choice of evils defense because they are merely interpretational guidelines to assist a jury or court in determining the validity of a choice of evils defense.

c.

We also find it noteworthy that the express considerations set forth in *Kealoha* and *DeCastro* are in accord with at least five other jurisdictions. In *Commonwealth v. Capitolo*, 508 Pa. 372, 498 A.2d 806, 808 (1985), a Pennsylvania court was faced with an MPC-based justification statute that relieves a defendant of liability for criminal conduct if (1) the actor believed such conduct to be necessary to avoid a harm or evil to himself or to another, and (2) "the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged[.]" Crimes and Offenses Pa. Cons.Stat. Ann. § 503 (1983).

However, the Pennsylvania court commented that:

The defense of necessity, however, does not arise from a "choice" of several courses of actions; instead it is based on a real emergency. It can be asserted only by an actor who is confronted with such a crisis as a personal danger (to oneself or others), a crisis which does not permit a selection from among several solutions, some of which do not involve criminal acts. Accordingly, the defense can be raised only in situations that deal with harms or evils that are readily apparent and recognizable to reasonable persons. The defense cannot be permitted to justify acts taken to foreclose speculative and uncertain dangers, and is therefore limited in application to acts directed at the avoidance of harm that is reasonably certain to occur.

Furthermore, the actor must reasonably believe that the conduct chosen was necessary to avoid the greater threatened harm or evil. Because the harm must be real, and not an imagined, speculative, or non-imminent harm, the actions taken to avoid the harm must support a reasonable belief or inference that the actions would be effective in avoiding or alleviating the impending harm.

*Id.* 498 A.2d at 808–09 (citations omitted).

Based on these aforementioned considerations, the court held that:

In order, then, to be entitled to an instruction on justification as a defense to a crime charged, the actor must first offer evidence that will show:

(1) that the actor was faced with a clear and imminent harm, not one which is debatable or speculative;

(2) that the actor could reasonably expect that the actor's actions would be effective in avoiding this greater harm;

(3) that there is no legal alternative which will be effective in abating the harm; and

(4) that the Legislature has not acted to preclude the defense by a clear and deliberate choice regarding the values at issue.

*Id.* at 809.

The Pennsylvania court apparently felt that the express wording of its statute did not adequately cover some compelling considerations of a choice of evils defense. Thus, without *adding* elements to a statutory justification defense, it articulated considerations which, when present, would defeat a

justification defense. *Accord Senay v. Commonwealth,* 650 S.W.2d 259, 260 (Ky.1983) (expanding Kentucky's MPC-based choice of evils statute to include common law elements that were not present in the Kentucky statute); *State v. O'Brien,* 132 N.H. 587, 567 A.2d 582, 583–84 (1989) (reasoning that New Hampshire's MPC-based statute sets up a balancing test wherein "the desire or need to avoid the present harm must outweigh the harm sought to be prevented," and therefore expanded the statute to include the common law element that there must be no lawful alternative); *see also People v. Brandyberry,* 812 P.2d 674, 677–79 (Colo.Ct.App.1990) (inquiring into common law elements not articulated in Colorado's MPC-based statute for purposes of determining whether a jury instruction should be given); *State v. Smith,* 884 S.W.2d 104, 105 (Mo.Ct.App.1994) (examining common law elements not expressed in the MPC-based statute to determine if a necessity or justification defense instruction should be submitted to the jury).[10]

Accordingly, we reaffirm our holdings in *Kealoha* and *DeCastro.*

### 4. *The choice of evils instruction was erroneous; however, a vacatur of conviction is not required.*

#### a.

■ The jury instruction in this case, patterned after Hawai'i Jury Instruction 7.12, stated as follows:

It is a defense to the offense charged that the defendant's conduct was legally justified. The law recognizes the "choice of evils" defense, also referred to as the "necessity" defense.

The "choice of evils" defense justifies the defendant's conduct if the defendant reasonably believed that compliance with the law would have resulted in greater harm to himself or another than the harm sought to be prevented by the law defining the offense charged.

In order for the "choice of evils" defense to apply, four conditions must be satisfied. *First, the defendant must have reasonably believed that there was no legal alternative available to him. Second, the defendant must have reasonably believed that the harm sought to be prevented was imminent or immediate. Third, the defendant's conduct must have been reasonably designed to actually prevent the threat of greater harm. Fourth, the harm sought to be avoided must have been greater than the harm sought to be prevented by the law defining the offense charged.*

Accordingly, if the prosecution has not proved beyond a reasonable doubt that the defendant's conduct was not legally justified by the "choice of evils" defense, then you must find the defendant not guilty of Count IV: Place to Keep Loaded Firearm. If the prosecution has done so, then you must find that the "choice of evils" defense does not apply.

(Emphasis added.)

The jury instruction on the choice of evils justification defense complies with the language of HRS § 703–302(1)(a), as well as our holdings in *Kealoha* and *DeCastro,* to the extent that the first and third elements follow the case law of *Kealoha* and *DeCastro* (i.e., (1) no alternative available, and (3) the crime committed was not reasonably designed to actually avoid the harm or evil sought to be avoided), and the second and fourth elements track the express language of HRS § 703–302(1)(a) (i.e., (2) imminent harm, and (4) the harm or evil sought to be avoided is greater than that sought to be prevented).

Nevertheless, we find error with the instruction because it fails to articulate that the "common law" elements set forth in *Kealoha* and *DeCastro* are considerations for pur-

---

**10.** Additionally, there are jurisdictions which do not codify a choice of evils or necessity defense. In those jurisdictions, the courts appear to follow the common law elements for a choice of evils defense which provide an expanded analysis for determining whether a defendant is excused from liability. *See People v. Metters,* 61 Cal. App.4th 1489, 72 Cal.Rptr.2d 294, 303 (1998)

(applying common law choice of evils defense elements in the absence of an applicable statute); *State v. Crawford,* 308 Md. 683, 521 A.2d 1193, 1200–01 (1987) (applying the common law choice of evils defense in the absence of a statute); *State v. Champa,* 494 A.2d 102, 104 (R.I. 1985) (quoting common law choice of evils defense in the absence of an applicable statute).

poses of the first requirement of the statute. In other words, the instruction does not first expressly set forth the statutory requirements pursuant to HRS § 703–302. Instead, it attempts to incorporate both statutory requirements and case law considerations without distinguishing between the two. Such an incorporation misstates the law.[11]

An accurate reflection of the law would be to first acknowledge that, pursuant to HRS § 703–302(1)(a), conduct by the defendant is justifiable if (1) the defendant engages in conduct which he or she believes to be reasonably necessary to avoid an imminent harm or evil to the actor or to another, *and* (2) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged. HRS § 703–302(1)(a).

Thereafter, the instruction should advise the jury that

with respect to requirement (1) above, a person does not reasonably believe that it is necessary to commit a crime to avoid an imminent harm or evil to himself or others when one or more of the following is a fact:

(a) A third alternative that did not involve the commission of a crime was reasonably available to the person;

(b) The crime committed was not reasonably designed to actually avoid the harm or evil sought to be avoided; or

(c) The harm or evil sought to be avoided was not imminent when the person committed the crime.

*DeCastro*, 81 Hawai'i at 153–54, 913 P.2d at 564–65.

b.

Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect

which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error might have contributed to conviction. If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

*State v. Loa*, 83 Hawai'i 335, 350, 926 P.2d 1258, 1273 (citation omitted), *reconsideration denied*, 83 Hawai'i 545, 928 P.2d 39 (1996).

■  Although the jury instruction in this case did not accurately reflect the law on choice of evils in Hawai'i, such an error does not require a reversal of Defendant's conviction.

· In this case, Defendant presented one argument to the jury for a choice of evils defense: that his co-worker asked him to bring some "protection" to work because an anonymous telephone call indicated that the company would be robbed that day. *See* n.4.

However, the facts surrounding the Place to Keep Loaded Firearm charge arose out of Defendant's possession of a loaded gun in his waistband while sitting in his car at a gas station. *See* n.3. Thus, even if we were to accept that Defendant's only reason for carrying a loaded gun that day was because of an anonymous tip that his workplace would be robbed, it does not logically follow that he had no choice but to carry a loaded gun to a gas station which was located away from his work place. If Defendant's reason for carrying a loaded gun were true, then he should have left his gun at the location that was supposed to have been robbed. In light of the factual basis for the charge, Defendant's argument that he had no choice but to bring a loaded gun to work is too far removed. As such, we believe there is no reasonable possibility that the erroneous jury instruction contributed to his conviction of Place to Keep Loaded Firearm.[12]

---

**11.**  To the extent that we have found error with the instruction given in this case, we declare Hawai'i Jury Instruction 7.12 to be an erroneous statement of the law.

**12.**  We are not saying that as a matter of law the instruction should not have been given. A defendant is "entitled to an instruction on every defense or theory of defense having *any* support in the evidence, provided such evidence would sup-

*5. The jury instruction did not improperly place the burden of proving the defense on Defendant.*

Defendant also argues that the four conditions set forth in the jury instructions "improperly placed the burden of proving the defense on the defendant by implying that the burden was a 'question of fact' to be decided by the jury." In other words, "[t]he result of [the jury instruction] is a 'shifted burden.' In essence, the jury was 'given the opportunity to reject the defense as less than credible' before the state was put to the test of disproving the defense beyond a reasonable doubt." However, it is a long-standing rule in Hawai'i that

> [w]here the defense is justification, once evidence of a fact, or set of facts, which negatives penal liability has been introduced, the burden is on the prosecution to disprove the facts that have been introduced or to prove facts negativing the justification defense and to do so beyond a reasonable doubt.

*State v. Straub*, 9 Haw.App. 435, 444, 843 P.2d 1389, 1393 (1993) (citations omitted).

Thus, the "result" complained of by Defendant is exactly what is mandated by law: that the defendant first has the burden to put into evidence a set of facts which negative penal liability and, once accomplished, the burden shifts to the State to disprove the defense beyond a reasonable doubt. *See id.* As such, Defendant's argument is without merit.

## IV. CONCLUSION

In conclusion, we reaffirm our holdings in *Kealoha* and *DeCastro* and, therefore, affirm the June 28, 1996 Amended Judgment, Conviction and Probation Sentence.

port the consideration of that issue by the jury, no matter how weak, inconclusive or unsatisfactory the evidence may be." *State v. Robinson*, 82 Hawai'i 304, 313–14, 922 P.2d 358, 367–68 (1996) (emphasis in original) (quotation marks and citation omitted). Given this standard, Defendant was entitled to an instruction on a choice of evils defense.

ACOBA, J., concurring in part and dissenting in part.

I concur with the majority's conclusion that the choice of evils instruction of the first circuit court (the court) was erroneous because it did not expressly set forth the statutory elements of that defense contained in Hawai'i Revised Statutes (HRS) § 703–302(1)(a) (1993). I also concur that the erroneous instruction was harmless because Defendant–Appellant Malakai Maumalanga (Defendant) did not present any evidence to satisfy the statutory elements of the defense. However, because I regard the majority's proposed addition of common-law "considerations" to the elements of the choice of evils defense as unwarranted and unwise, with all due respect, I must disagree with the majority's formulation of that instruction.

I.

HRS § 703–302(1)(a) states that "[c]onduct which the actor believes is necessary to avoid an imminent harm or evil to the actor or to another is justified provided that ... the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged[.]" In contrast to this language, the court instructed the jury on the choice of evils defense as follows:

> In order for the "choice of evils" defense to apply, four conditions must be satisfied. First, the defendant must have reasonably believed that *there was no legal alternative available to him.* Second, the defendant must have reasonably believed that the harm sought to be prevented was imminent or immediate. Third, the defendant's conduct must have been reasonably *designed to actually prevent* the threat of greater harm. Fourth, the harm sought to be avoided must have been greater than

Our conclusion that there was no reasonable possibility that the erroneous jury instruction contributed to Defendant's conviction in this case is based upon the evidence submitted to the jury. It is not a conclusion of law that Defendant was not entitled to a choice of evils instruction.

the harm sought to be prevented by the law defining the offense charged.

(Emphases added.)

As the majority points out, the second and fourth elements given by the court were derived from HRS § 703–302(1)(a), and the first and third elements followed this court's prior holdings in *State v. Kealoha*, 9 Haw. App. 115, 826 P.2d 884 (1992) and *State v. DeCastro*, 81 Hawai'i 147, 913 P.2d 558 (App. 1996). I agree with the majority that the court's instruction was erroneous because it did not "expressly set forth the statutory requirements pursuant to HRS § 703–302." Majority opinion at 106, 976 P.2d at 419–20.

## II.

I also concur with the majority's conclusion that the error was harmless. Because Defendant was acquitted of charges of Attempted Murder in the First Degree, Attempted Murder in the Second Degree, and Terroristic Threatening in the First Degree, the only conviction on appeal is Defendant's conviction for Place to Keep Firearms, HRS § 134–6(c) (1993). HRS § 134–6(c) provides, in relevant part, that as a general matter, "all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn[.]" In explaining the choice of evils allegedly faced by Defendant, defense counsel asserted in closing argument that *"the only reason* why [Defendant took] those guns out of that house and [took them] down to his work place is because Taylor [Wagen (Wagen), a co-worker] calls him up and says, 'We are going to get robbed. Can you bring some protection? Help us out.'" (Emphasis added.) It was then argued that the harm Defendant sought to avoid was "immediate" because the robbery of EM Tours "could have happened anytime that night. So it was immediate throughout that night[.]" Defense counsel reiterated that Defendant "had those guns only because [sic] for one reason that night, [which] was because [Wagen] asked him to bring them to the work place to protect them."

This was the sole argument Defendant made to the jury with respect to the choice of evils defense. As such, I believe the jury could have properly rejected this defense because there was no evidence presented to demonstrate that Defendant believed it was *necessary,* as HRS § 703–302(1)(a) requires, to carry one of the guns with him when he left EM Tours, in order to avoid an imminent robbery of EM Tours. Defendant did not testify as to why he took one gun with him when he left EM Tours, and left one gun with Wagen at the EM Tours office during that time.

On appeal, Defendant appears to offer a new theory about his choice of evils defense:

There was evidence that: (1) both [Defendant] and his family had been harassed by the Pinoy Gang; (2) the police had failed to render help under these circumstances; and, (3) [Defendant] knew that a member of the Pinoy Gang had shot someone in a park in a drive-by shooting. . . .

A reasonable juror could have found that under the "plain language" of [HRS § 703–302] . . . [Defendant], in light of the above facts, reasonably believed it necessary to carry a handgun in order to protect himself from danger that could befall him at any time by a member of the Pinoy Gang. The harm sought to be avoided in this case was [Defendant's] death, which is greater than the general harm sought to be avoided by the law defining the offense of Place to Keep Firearms.

However, Defendant never testified that he took the gun with him when he left EM Tours in order to protect himself or anyone else from a member of the Pinoy Gang. Although Defendant testified that Pinoy Gang members had been "harassing" him and his family, and Defendant knew that a member of that gang had shot someone from Defendant's former gang earlier in the evening, there is no testimony by Defendant that he took the gun with him when he left EM Tours because he was scared by the Pinoy Gang or by the earlier shooting, and thus needed the gun to protect himself.

In the absence of such testimony, there would be no basis for the jury to have found that Defendant reasonably believed it was necessary to carry a gun when he left EM Tours in order to avoid imminent harm inflicted by the Pinoy Gang. In fact, Defendant

testified that he *"remember[ed]* [he] had the gun on [him]" when he was attempting to hide from someone at the gasoline station whom he suspected was involved in the earlier shooting. (Emphasis added.) This testimony belies any assertion now that Defendant took the gun with him for protection from the Pinoy Gang, since Defendant did not even "remember" he had the gun with him until long after he left the EM Tours office.

Given the testimony presented, the effect of the erroneous instruction was harmless. Even if the court had given an instruction which tracked the language of HRS § 703–302(1)(a), there was no evidence to demonstrate that Defendant believed carrying the gun with him while he was away from EM Tours would avoid either the imminent harm of a robbery to EM Tours or the imminent harm posed by members of the Pinoy Gang.

### III.

I note, further, that there are three limitations on the choice of evils defense set forth in HRS § 703–302(1), which should be considered by a trial court in giving an instruction on choice of evils. Under HRS § 703–302(1)(b), the court is not to instruct the jury on the defense if "the [Hawai'i Penal Code (HPC) ] [ ] or other law defining the offense provides exceptions or defenses dealing with the specific situation involved[.]" Similarly, no instruction may be given where "[a] legislative purpose to exclude the justification claimed ... plainly appear[s]." HRS § 703–302(1)(c).

The third limitation, contained in HRS § 703–302(2), provides that if the state of mind for the offense charged is either reckless or negligent, the court must instruct the jury that the choice of evils defense is not available if the jury finds that the defendant was (1) reckless or negligent in bringing about the situation requiring a choice of evils, or (2) reckless or negligent in evaluating the necessity for his or her conduct.

In this case, the instruction given for the offense of Place to Keep Pistol or Revolver set forth "intentionally, knowingly, or *recklessly* " as the alternative states of mind

which would satisfy this element of the offense. (Emphasis added.) However, apparently no instruction was given advising the jury of the limitation set forth in HRS § 703–302(2). Plaintiff–Appellee State of Hawai'i (the State) argued only that Defendant acted intentionally or knowingly. Because Defendant testified he did not remember he had the gun until the incident at the gasoline station, there was evidence from which a juror might find Defendant was reckless in bringing about the precipitating situation. Thus, a "reckless" state of mind would have been sufficient to satisfy the state of mind element, and the court should have instructed the jury in accordance with HRS § 703–302(2).

### IV.

As previously stated, I cannot concur that a jury instruction on the choice of evils defense set forth in HRS § 703–302(1)(a) should include common-law "considerations." The majority proceeds beyond the plain language of the statute and directs that the jury should be instructed on additional "considerations for purposes of the first requirement of [HRS § 703–302(1)(a) ]" as follows:

[A] person does not reasonably believe that it is necessary to commit a crime to avoid an imminent harm or evil to himself [or herself] or others when one or more of the following is a fact:

(a) *A third alternative* that did not involve the commission of a crime *was reasonably available* to the person;

(b) The crime committed was *not reasonably designed to actually avoid* the harm or evil sought to be avoided; or

(c) The harm or evil sought to be avoided *was not imminent* when the person committed the crime.

Majority opinion at 106, 976 P.2d at 420 (emphases added) (quoting *DeCastro*, 81 Hawai'i at 153–54, 913 P.2d at 564–65). In this manner, the majority injects into the statutory definition of the defense additional elements derived from the " 'common law' formulation set forth in *Kealoha* and *DeCastro*." *Id.* at 105, 976 P.2d at 418. In my view, this

approach is generally unwarranted for several reasons.[1]

## V.

The *Kealoha* and *DeCastro* formulations of the defense no longer apply because they were superseded when the HPC was adopted. Following the adoption of the HPC in 1973, "the express language of the [HPC] was controlling." *DeCastro*, 81 Hawai'i at 155, 913 P.2d at 566 (concurring opinion).

Second, our construction of HPC provisions must be grounded in the words used. "[I]n order to promote justice and effect the objects of the law, all of the [HPC's] provisions shall be given a genuine construction, according to the fair import of the words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." HRS § 701–104 (1993). With all due respect, I believe appending common-law "considerations" to the statute takes us far afield from the governing proposition of HRS § 701–104. Construing the statute as written and using as an aid thereto, the commentary to HRS § 703–302 best harmonizes our interpretation with the intent of the drafters of the HPC.

Further, were it the intent of the legislature to incorporate additional considerations limiting the applicability of the defense, it could have done so, and I believe it would have done so as it did in subsection (3) of HRS § 703–302[2] in connection with the offense of escape.

The effect of the considerations is to further restrict the use of the defense. *See* discussion *infra*. This ostensibly is based upon the majority's belief that the language of HRS § 703–302 is "general and objective." Majority opinion at 102, 976 P.2d at 416.

However, restrictions as were believed appropriate by the drafters of the HPC have already been incorporated through "numerous safeguards" in the statute:

> [T]here are numerous safeguards built into [HRS] § 703–302. The danger of causing the necessity of choosing between evils must be imminent. Moreover, subsection (2) provides that if the necessity of choosing between harms or evils results from the defendant's recklessness or negligence, the defense is not available in a prosecution of any offense for which recklessness or negligence, as the case may be, suffices for conviction.
>
> It is no defense under this section that the defendant thought compliance with the statute immoral or unwise; the legislative decision to make particular conduct criminal is to be given great weight.

Commentary on HRS § 703–302, at 53.

Thus, even beyond the requirements of necessity, imminence, and greater harm, and the recklessness or negligence exception, the defense is not available if (1) specific .exceptions otherwise falling within the purview of the defense are included within the definition of an offense, or (2) a legislative purpose to exclude the defense exists. *See* HRS § 703–302(1)(b) and (c). The HPC thus includes "numerous safeguards" against its improvident use. Commentary on HRS § 703–302, at 53.

Finally, I do not regard the additions proposed by the majority as wise. This court has observed that "[t]he purpose of an instruction is to furnish guidance to the jury in their deliberations, and to aid them in arriving at a proper verdict." *McKeague v. Talbert*, 3 Haw.App. 646, 657, 658 P.2d 898, 906

---

1. I do not find the cases cited by the majority to be persuasive since none of them squarely considered the appropriate instruction to he given a jury nor considered all the points raised in this dissent.

2. In 1986, the Hawai'i legislature added subsection (3) to Hawai'i Revised Statutes (HRS) § 703–302 (1993), qualifying the choice of evils defense for charges of escape. In this subsection, the legislature added conditions similar to the "no alternatives" consideration. Hence, in order to assert a choice of evils defense, a defen-

dant charged with violating HRS §§ 710–1020 or –1021 (1993) must prove, *inter alia*, that neither the prison authorities nor the courts were available as an alternative to escape. Subsection (3) illustrates that the legislature was capable of incorporating specific limiting elements, such as a "no alternatives" requirement, if it chose to do so. The fact that a similar requirement is not expressly set forth in HRS § 703–302(1) indicates, in my opinion, that no such requirement was intended for defendants charged with crimes other than escape.

(1983). Accordingly, "[i]n his [or her] instructions, the trial judge should inform the jury as to the law of the case applicable to the facts *in such a manner that they may not be misled." Id.* (emphasis added). At best, adding these considerations in a jury instruction on choice of evils will tend to confuse and mislead the jury. At worst, including such common-law considerations "redefines the [statutory] 'reasonably believes' factor," beyond our power to do so. *DeCastro,* 81 Hawai'i at 155, 913 P.2d at 566 (concurring opinion) (some internal quotation marks and citations omitted).

## VI.

The majority maintains that its considerations "do not add additional elements to a choice of evils defense because they are merely interpretational guidelines to assist a jury or court." Majority opinion at 104, 976 P.2d at 418.

### A.

Plainly, the "considerations" are "additional elements." By requiring that the jury be additionally instructed "with respect to requirement (1) [of HRS § 703–302]" that "a person does *not* reasonably believe that it is necessary to commit a crime" (emphasis added) if "one or more" of three considerations "is a fact," majority opinion at 106, 976 P.2d at 420 (quoting *DeCastro,* 81 Hawai'i at 153–54, 913 P.2d at 564–65), the majority has further defined the term "reasonably believes" as a *matter of law.* Under this new instruction, any one of the three considerations, if established as "fact," is deemed to preclude a finding of "reasonable belief" and thus use of the defense.

Of these three considerations, two are additional elements that now must be satisfied by the defendant in addition to those already imposed under HRS § 703–302(1)(a). Despite the majority's assertion that no elements are being added, even the State acknowledges in its answering brief that in *Kealoha* and *DeCastro* this court "interpreted [HRS § 703–302(1)(a) ] to include *two additional elements* that must be satisfied in order for the 'choice of evils' defense to apply[:] ... (1) that a third alternative not

exist; [and] (2) that [a] defendant's actions be reasonably designed to actually prevent the threatened greater harm." (Emphasis added.) The "two additional elements" cited by the State are the very elements included in the majority's proposed instruction as the first and second considerations.

### B.

As is equally evident, the considerations are not "merely interpretational guidelines," majority opinion at 104, 976 P.2d at 418, since the considerations are in fact the basic *elements* of the common law, pre-HPC definition of the choice of evils defense from *Kealoha.* That definition was supplanted by HRS § 703–302(1)(a). However, under the guise of defining the element "reasonably believes," the majority now incorporates that common law formulation into the HPC definition of the defense. Consequently, the instruction clashes with the express terms of HRS § 703–302(1)(a) and, therefore, is not "merely interpretational."

## VII.

In addition to my overall concerns with the majority's proposed instruction, I have specific concerns with respect to each of the three considerations.

The first consideration, in effect, places upon a defendant the burden of adducing evidence that there was no "third alternative" or, assuming the existence of one, that such alternative was not "reasonably available." Hence, the first consideration adds an element not expressly mandated by the statute, and thus limits the applicability of the defense. It is one thing to allow argument on a "third alternative" or any number of alternatives in final argument with respect to the "necessary" conduct element if such alternatives present themselves under the particular circumstances of the case; it is quite another thing to instruct the jury that such matters must be *disproved* under the evidence before the jury may consider the defense. *See* discussion *infra* part IX.

Additionally, the language of HRS § 703–302 and its commentary noticeably fail to

mention anything about availability of alternatives. This consideration is not noted as one of the "numerous safeguards built into [HRS § ] 703–302[.]" Commentary on HRS § 703–302, at 53. The commentary notes that "[i]f the defendant's conduct was not necessary, if one evil was not greater than the other, if the defendant exceeded the reasonable bounds of intelligence and morality, the defendant may be convicted for the defendant's conduct notwithstanding the defendant's attempts to justify the defendant's actions." *Id.* Hence, in contrast to the majority's instruction, the statute does not indicate that the choice of evils defense should fail if the defendant had a third alternative available, so long as a defendant's belief that the conduct chosen was necessary, is objectively reasonable.[3]

## VIII.

In my view, the second consideration, regarding whether the defendant's act was "reasonably designed to actually avoid the [imminent] harm or evil[,]" also is unwarranted because it, too, is not dictated by HRS § 703–302(1)(a).

As with the first consideration, the second effectively adds a requirement not found in the text or justified in the commentary to the section. *See DeCastro,* 81 Hawai'i at 155, 913 P.2d at 566 (concurring opinion).

Further, the second instruction engenders confusion for the jury in reconciling the statutory requirement that the defendant believes his or her conduct was "necessary," and the consideration that his or her conduct was not "designed to *actually avoid* the harm." (Emphasis added.) On one hand, the term "necessary" connotes conduct appropriate or suitable to the circumstances, thus directing the jury to deliberate on whether it was objectively reasonable for a defendant to believe that his or her conduct was appropriate or suitable under the circumstances. By contrast, the words "actually avoid" impart to the reader the sense that the conduct chosen by a defendant must be one certain or nearly certain of success in

avoiding harm, rather than one of objective reasoned choice as HRS § 703–302 would appear to require.

Accordingly, in seeming to place upon the defendant the burden of demonstrating certainty of success regarding the chosen conduct, the second consideration raises the qualifying threshold for the defense from conduct the actor reasonably believes was "necessary," to conduct the actor reasonably believes was certain to avoid the harm. To move from a standard of reasonable belief in the necessity of engaging in the prohibited act to one requiring belief that the act will actually avoid the harm is to court abolishment of the defense altogether:

> Finally, many commentators have had difficulty with the concept of necessity [ (or choice of evils) ] because of the possibility of unforeseeable changes in the perilous situation. For instance, if a number of passengers are thrown overboard from a ship to save a much larger number of persons, there is really no way for the actors to foresee the exact moment when a rescue ship may arrive. *There is always the chance that help will arrive in time to make the emergency action unnecessary. Such objections, however, fail to take account of the fact that other defenses which are predicated on a threat to person or property can take account only of the probability of harm. One can never guarantee that the uplifted knife will be plunged into the victim. If necessity is not admitted where there is a high degree of probability of disastrous consequences if action is not taken, then it can never be admitted.* A person faced with such seeming necessity is and will remain in a personal moral quandary because of the person's uncertainty. Our only point is that the threat of criminal punishment is unneeded here.

Commentary on HRS § 703–302, at 54 (emphasis added) (internal quotation marks, citation, and footnote omitted).

---

**3.** The term "believes" in HRS § 703–302 means "reasonably believes." *See* HRS § 703–300 (1993). This definition, as provided in HRS

§ 703–300, was intended by the legislature to incorporate a "reasonable [person] standard." Supplemental Commentary on HRS § 703–300.

### IX.

As to both the first and second considerations, an instruction phrased in terms of what "reasonable belief" is *"not,"* and made a part of the defense instruction, implicitly places the defendant in the role normally assigned under the HPC to the prosecutor. The prosecutor is charged with proving "facts which negative the defense." Commentary on HRS § 703–301, at 52. But the three considerations which practicably must be disproved by a defendant to prove his or her "reasonable belief" are those very facts which would negative the choice of evils defense. Thus, both the existence of legal alternatives to the action chosen by a defendant and the absence of a belief in actual avoidance of the harm, which would be expected to be the prosecution's burden to prove under the proposed instruction, are shifted to the defendant. Consequently, I believe the instruction also improperly alters the allocation of trial functions under the HPC.

### X.

Finally, the third proposed consideration, that is, that the harm or evil sought to be avoided was not imminent, is both repetitive and confusing. The beginning of the instruction, which generally tracks the statutory language of HRS § 703–302(1)(a) and precedes the listing of considerations, provides that the defendant must have engaged "in conduct which he or she believes to be reasonably necessary to avoid an imminent harm or evil." As such, the requirement of imminence will be communicated to the jury and there is no need for another instruction reiterating that the harm or evil sought to be avoided must be imminent. The drafters of Model Penal Code (MPC) § 3.02 (Official Draft and Revised Comments 1962) did not expressly require that the harm or evil be imminent because it was thought that "[s]uch a requirement unduly emphasizes one ingredient in the judgment that is called for at the expense of others just as important." MPC § 3.02 comment 3, at 17. While the Hawai'i legislature has included an imminence requirement in the choice of evils statute, an additional jury instruction which again refers to imminent harm places undue emphasis on that requirement.

Moreover, the third consideration will only tend to confuse the jury because that consideration is cast in the negative, that is, that the harm "was *not* imminent" (emphasis added), in contrast to the affirmative form of the same requirement in the earlier part of the instruction. Accordingly, the jury should not be instructed on the third consideration set forth by the majority.

### XI.

In sum, the first and second considerations added to the jury instruction by the majority dictate requirements that "go beyond the factors denominated under the statute [and] impose additional burdens on a defendant, not authorized[.]" *DeCastro,* 81 Hawai'i at 155, 913 P.2d at 566 (concurring opinion). The third consideration unduly emphasizes the imminent element of the defense over the other elements. All three considerations will be confusing to the jury rather than "inform the jury as to the law of the case applicable to the facts in such a manner that they may not be misled." *McKeague,* 3 Haw.App. at 657, 658 P.2d at 906.

For these reasons, I respectfully dissent.