976 P.2d 372

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Malakai MAUMALANGA,
Defendant–Appellant**

**No. 20146.**

Supreme Court of Hawai'i.

Nov. 30, 1998.

Reconsideration Denied
Jan. 12, 1999.

Theodore Y.H. Chinn and Rose Ann Fletcher, Deputies Public Defender, on the briefs, for defendant-petitioner-appellant MalakaiMaumalanga.

Mark Yuen, Deputy Prosecuting Attorney, on the briefs, for plaintiff-respondent-appellee State of Hawai'i.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by LEVINSON, J.

We issued a writ of certiorari to review the decision of the Intermediate Court of Appeals (ICA) in *State v. Maumalanga*, 90 Hawai'i 96, 976 P.2d 410 (App.1998) [hereinafter, the "ICA's opinion"]. In his application for a writ of certiorari, Maumalanga asserts that (1) the ICA (a) improperly held that common-law "considerations" may be incorporated into the choice of evils defense set forth in Hawai'i Revised Statutes (HRS) § 703–302 (1993) [1] and (b) having determined

---

1. HRS § 703–302 provides in pertinent part:

   **Choice of evils.** (1) Conduct which the actor believes to be necessary to avoid an imminent harm or evil to the actor or to another is justifiable provided that:
   (a) The harm or evil sought to be avoided by such conduct is greater than that sought to

that an erroneous choice of evils instruction had been given, erred in holding that there was no reasonable possibility that the instruction contributed to Maumalanga's conviction of place to keep loaded firearm, and (2) the trial court committed plain error in failing to give a specific unanimity instruction pursuant to this court's holding in *State v. Arceo*, 84 Hawai'i 1, 928 P.2d 843 (1996).

We affirm the judgment of the ICA affirming Maumalanga's conviction of place to keep loaded firearm in violation of HRS §§ 134–6(c) and (e) (1993).[2] However, with regard to the ICA's incorporation of common-law elements into the choice of evils defense, as codified at HRS § 703–302, we disagree with the ICA's majority opinion and adopt the analysis reflected in Judge Acoba's concurring and dissenting opinion. Accordingly, we hold that the elements of the choice of evils defense are set forth, in their entirety, in the express language of the aforementioned statute and do not include additional elements from the "common law" formulation as set forth in *State v. Kealoha*, 9 Haw.App. 115, 826 P.2d 884 (1992), and *State v. DeCastro*, 81 Hawai'i 147, 913 P.2d 558 (App.1996),

because they were superseded by the adoption of the Hawai'i Penal Code in 1973. Maumalanga's additional points of error on appeal are without merit for the reasons set forth below.

## I.  *BACKGROUND*

The facts are uncontroverted and adequately summarized in the ICA's opinion:

On June 8, 1996, Defendant had been working at EM Tours as a porter. Because an alleged anonymous phone call was received by the tour company that it would be robbed that evening, Defendant brought two guns to work with him that day. Apparently, no robbery occurred.

While at work on June 8, 1996, Defendant heard of a possible drive-by shooting at Kanoa Park. Defendant then left work at about 10:00 p.m. to personally drive home two of his friends who were at the park at the time of the shooting. After dropping off his friends, Defendant went to a gas station to put gas in his car.[3] While at the gas station, Defendant coincidentally saw boys who he suspected were involved in the drive-by shooting.

be prevented by the law defining the offense charged; and

(b) Neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and

(c) A legislative purpose to exclude the justification claimed does not otherwise plainly appear.

(2) When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils in appraising the necessity for the actor's conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

2.  HRS § 134–6 provides in pertinent part:

**Carrying or use of firearm in the commission of a separate felony: place to keep firearms; loaded firearms; penalty.**

. . .

(c) Except as provided in sections 134–5 and 134–9, all firearms and ammunition shall be confined to the possessor's place of business, residence, or sojourn; provided that it shall be

lawful to carry unloaded firearms or ammunition or both in an enclosed container from the place of purchase to the purchaser's place of business, residence, or sojourn, or between these places upon change of place of business, residence, or sojourn, or between these places and the following: a place of repair; a target range; a licensed dealer's place of business; an organized, scheduled firearms show or exhibit; a place of formal hunter or firearm use training or instruction; or a police station. "Enclosed container" means a rigidly constructed receptacle, or a commercially manufactured gun case, or the equivalent thereof that completely encloses the firearm.

. . .

(e) . . . Any person violating this section by carrying or possessing a loaded firearm or by carrying or possessing a loaded pistol or revolver without a license issued as provided in section 134–9 shall be guilty of a class B felony. . . .

3.  The ICA's factual summary is in error here, inasmuch as Maumalanga's trial testimony was that the car he was driving on the evening in question did not belong to him and that he had borrowed it from a co-worker.

Defendant alleged that one of the boys at the gas station pulled out a gun and aimed it at Defendant. Because Defendant unsuccessfully attempted to drive away, Defendant allegedly had no choice but to grab his gun and aim it at the boys. Defendant then shot off four to five rounds from his gun.

Defendant was subsequently arrested and charged with seven counts: Attempted Murder in the First Degree (Count I); Attempted Murder in the Second Degree (Counts II and III); Place to Keep Loaded Firearm (Count IV); and Terroristic Threatening in the First Degree (Counts V, VI and VII).

The trial court subsequently granted, in part, Defendant's motion for directed verdict and thereby acquitted Defendant of Counts VI and VII.

At trial, Defendant specifically raised a choice of evils defense to the charge of Place to Keep Loaded Firearm, [ (HRS) ] §§ 134–6(c) and (e).... [4]

ICA's opinion at 97–99, 976 P.2d at 411–13 (footnotes omitted).

At trial, Maumalanga offered the following pertinent testimony on cross-examination:

Q. You didn't have [the gun] in a gun case or anything like that?

A. No.

Q. It was somewhere in the dashboard of [the] car?

A. No.

Q. Where was it?

A. Had them on me.

Q. Where was it on you?

4. As the ICA observed in a footnote, the relevant portion of defense counsel's closing argument was as follows:

Let's talk about, I believe, it's Count 4, and that's the position of the gun.
Actually, ... [h]e is charged with not keeping it in the right place.
Now the Defense to this charge, and this is what we are asserting this choice of evils.
Now [Defendant] had to have the gun, he had to have those guns for a reason. Choice of evils....
... [The police] don't protect [Defendant]. [Defendant] calls them, and what happens, they end up harassing him because people don't want to let go of their own beliefs that [Defendant] is a gang member.

A. My wa[i]st[ ]band.

Q. Okay. And it was loaded, right?

A. Yeah.

. . . .

Q. Malo, you said that when Marino pulled a gun on you, the first thing you did was try to hide?

A. Yes. Step on the gas.

Q. Then you tried to hide?

A. Yeah.

Q. Later, you remember that you had a gun?

A. When I went lean to the passenger seat.

Q. The gun was in your waistband?

A. I knew I had them; but like when he pulled the gun, it was like all I was thinking, "I'm going to get shot." ·

The prosecution, in summation, argued in relevant part as follows:

Now in the fourth charge in this case, defendant is charged with the offense of Place to Keep Pistol or Revolver. Perhaps a better title would be, "Improper Place to keep Pistol or Revolver."

The State must prove four things beyond a reasonable doubt. One, that the defendant carried a loaded or unloaded pistol or revolver. You heard the distinction between a pistol, a semi-automatic versus a revolver. The defendant told you that he carried this.

Second, the State must prove that the defendant did not have a license to do so. Defendant admitted that....

Either the Pinoi–Boys either, neither the BBI or the police; so [Defendant] has no choice, he doesn't have the police to protect him. He knows the Pinoi–Boys are going after him, so he buys guns to protect himself and protect his family.
He doesn't have a choice but to have those guns in his possession; but he is not charged with possession. *So you have to remember that he is not charged with possession, but he is charged with place to keep; and the only reason why he takes those guns out of that house and take it down to his work place is because [his co-worker] calls him up and says, "We are going to get robbed. Can you bring some protection? Help us out."*

Third, the State must prove that that pistol, or revolver, was not in a container. *Defendant told you that it was in his wa[i]st[ ]band because, remember, when he was in the car, he remembered the gun was in his wa[i]st[ ]band and he told you he pulled it out.* The defendant told you. Number three.

Finally, the State must also prove that he did so intentionally, knowingly or recklessly. Defendant admitted that he brought the gun and he knew he had the gun.

(Emphasis added.)

The trial court instructed the jury pertaining to the choice of evils defense as follows:

The choice of evils defense justifies the defendant's conduct if the defendant reasonably believed that compliance with the law would have resulted in a greater harm to himself or another than the harm sought to be prevented by the law defining the offense charged.

In order for the "choice of evils" defense to apply, four conditions must be satisfied. First, the defendant must have reasonably believed that there was no legal alternative available to him.

Second, the defendant must have reasonably believed that this harm sought to be prevented was imminent or immediate.

Third, the defendant's conduct must have been reasonably designed to actually prevent the threat ... of greater harm.

Fourth, the harm sought to be avoided must have been greater than the harm sought to be prevented by the law defining the offense charged.

Accordingly, if the Prosecution has not proved beyond [a] reasonable ·doubt that the defendant's conduct was not legally justified by the "choice of evils" defense, then you must find the defendant not guilty of Count Four, Place to Keep Load[ed] Firearm.

Subsequently, the jury acquitted Maumalanga of four of the counts charged against him—Count I (attemmpted first degree mur-

der), Counts II and III (attempted second degree murder), and Count V (first degree terroristic threatening).[5] He was convicted of Count IV (place to keep loaded firearm). Maumalanga appealed his conviction, arguing that the circuit court had erroneously instructed the jury regarding the choice of evils defense. The ICA's majority opinion agreed that the instruction had been erroneous because "it attempt[ed] to incorporate both statutory requirements and case law considerations without distinguishing between the two." The majority opinion reasoned that

[a]n accurate reflection of the law would be to first acknowledge that, pursuant to HRS § 703–302(1)(a), conduct by the defendant is justifiable if (1) the defendant engages in conduct which he or she believes to be reasonably necessary to avoid an imminent harm or evil to the actor or another, *and* (2) the harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged. HRS § 703–302(1)(a).

Thereafter, the instruction should advise the jury that with respect to requirement (1) above, a person does not reasonably believe that it is necessary to commit a crime to avoid an imminent harm or evil to himself or others when one or more of the following is a fact:

(a) A third alternative that did not involve the commission of a crime was reasonably available to the person;

(b) The crime committed was not reasonably designed to actually avoid the harm or evil sought to be avoided; or

(c) The harm or evil sought to be avoided was not imminent when the person committed the crime.

ICA's opinion at 106–07, 976 P.2d at 420–21 (quoting *DeCastro*, 81 Hawai'i at 153–54, 913 P.2d at 564–65) (emphasis in original).

Nevertheless, the majority concluded that, on the record before it, the error did not

---

5. The trial court granted in part Maumalanga's motion for directed verdict, thereby acquitting him of Counts VI and VII (first degree terroristic threatening). *See* ICA's opinion at 98, 976 P.2d at 412.

require reversal of Maumalanga's conviction because,

> [i]n this case, Defendant presented one argument to the jury for a choice of evils defense: that his co-worker asked him to bring some "protection" to work because an anonymous telephone call indicated that the company would be robbed that day.

> However, the facts surrounding the Place to Keep Loaded Firearm charge arose out of Defendant's possession of a loaded gun in his waistband while sitting in his car at a gas station. Thus, even if we were to accept that Defendant's only reason for carrying a loaded gun that day was because of an anonymous tip that his workplace would be robbed, it does not logically follow that he had no choice but to carry a loaded gun to a gas station which was located away from his work place. If Defendant's reason for carrying a loaded gun were true, then he should have left his gun at the location that was supposed to have been robbed. In light of the factual basis for the charge, Defendant's argument that he had no choice but to bring a loaded gun to work is too far removed. As such, we believe that there is no reasonable possibility that the erroneous jury instruction contributed to his conviction of Place to Keep Loaded Firearm.

*Id.* at 106–07, 976 P.2d at 420–21.

Concurring in part and dissenting in part, Judge Acoba disagreed with "the majority's proposed addition of common-law 'considerations' to the elements of the choice of evils defense." Concurring and dissenting opinion at 107, 976 P.2d at 421. However, he concurred with the majority's conclusion that the erroneous instruction regarding the defense was harmless "because [Maumalanga] did not present any evidence to satisfy the statutory elements of the defense." *Id.*

In his application for writ of certiorari to this court, Maumalanga asserted that Judge Acoba's analysis of the elements of the choice of evils defense was accurate. However, he maintained that both Judge Acoba and the majority had erroneously concluded that there was no reasonable possibility that the erroneous choice of evils instruction given at

trial had contributed to his conviction. He also, for the first time, raised the question whether the trial court had committed plain error in failing to give a specific unanimity instruction, as required by this court's holding in *Arceo* whenever "separate and distinct culpable acts are subsumed within a single count ... [,] any one of which could support a conviction thereunder." *Arceo*, 84 Hawai'i at 32, 928 P.2d at 874.

## II. *STANDARDS OF REVIEW*

### A. *Jury Instructions*

" 'When jury instructions or the omission thereof are at issue on appeal, the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading,' " *State v. Kinnane*, 79 Hawai'i 46, 49, 897 P.2d 973, 976 (1995) (quoting *State v. Kelekolio*, 74 Haw. 479, 514–15, 849 P.2d 58, 74 (1993) (citations omitted)).... *See also State v. Hoey*, 77 Hawai'i 17, 38, 881 P.2d 504, 525 (1994).

" '[E]rroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.' " *State v. Pinero*, 70 Haw. 509, 527, 778 P.2d 704, 716 (1989) ... (quoting *Turner v. Willis*, 59 Haw. 319, 326, 582 P.2d 710, 715 (1978)).

> [E]rror is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reasonable possibility that error may have contributed to conviction.

*State v. Heard*, 64 Haw. 193, 194, 638 P.2d 307, 308 (1981) (citations omitted). If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside. *See Yates v. Evatt*, 500 U.S. 391,

402–03 [111 S.Ct. 1884, 1892–93, 114 L.Ed.2d 432] . . . (1991)[.]

*Arceo,* 84 Hawai'i at 11–12, 928 P.2d at 853–54 (quoting *State v. Holbron,* 80 Hawai'i 27, 32, 904 P.2d 912, 917, *reconsideration denied* 80 Hawai'i 187, 907 P.2d 773 (1995) (some citations omitted) (brackets in original) (emphasis deleted)); *see also State v. Loa,* 83 Hawai'i 335, 350, 926 P.2d 1258, 1273 (1996); *State v. Robinson,* 82 Hawai'i 304, 310–11, 922 P.2d 358, 364–65 (1996).

*State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997).

### B.  *Plain Error*

"We may recognize plain error when the error committed affects substantial rights of the defendant." *State v. Cullen,* 86 Hawai'i 1, 8, 946 P.2d 955, 962 (1997) (citations and internal quotation signals omitted). *See also* Hawai'i Rules of Penal Procedure (HRPP) Rule 52(b) (1993) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

*State v. Davia,* 87 Hawai'i 249, 253, 953 P.2d 1347, 1351 (1998).

### III.  *DISCUSSION*

■ As a preliminary matter, Maumalanga takes issue with the holding of the ICA's opinion that a jury instruction regarding the choice of evils defense should include common law "considerations" not expressly set forth within the four corners of HRS § 703–302. He urges this court to adopt Judge Acoba's dissenting position that all of the elements of the choice of evils defense are contained within the express language of HRS § 703–302 and that no common law "considerations" are grafted onto the statutory language, any such common law formulations having been superseded by the adoption of the Hawai'i Penal Code. We agree and hereby adopt Judge Acoba's reasoning as set forth in parts IV through XI of his concurring and dissenting opinion.

■ However, Maumalanga also urges this court to reject the ICA's majority opinion, as well as Judge Acoba's concurring and dissenting opinion, to the extent that both deem the circuit court's error in instructing the jury regarding the choice of evils defense to be harmless. Here, we disagree with Maumalanga and agree with the reasoning set forth in part II of Judge Acoba's concurring and dissenting opinion, which we also hereby adopt.

■ We write now only to address Maumalanga's new point of error: whether the trial court erred in failing to give a specific unanimity instruction to the jury.

[W]hen separate and distinct culpable acts are subsumed within a single count . . .— any one of which could support a conviction thereunder—and the defendant is ultimately convicted by a jury of the charged offense, the defendant's constitutional right to a unanimous verdict is violated unless one or both of the following occurs: (1) at or before the close of its case-in-chief, the prosecution is required to elect the specific act upon which it is relying to establish the "conduct" element of the charged offense; or (2) the trial court gives the jury a specific unanimity instruction, *i.e.,* an instruction that advises the jury that all twelve of its members must agree that the same underlying criminal act has been proven beyond a reasonable doubt.

*Arceo,* 84 Hawai'i at 32–33, 928 P.2d at 874–75.

Maumalanga argues that

there was evidence that Mr. Maumalanga took the guns from his home to his work place. Then, Mr. Maumalanga took one of the guns from the work place to pick up his friends to take them home. Based on these facts, . . . there were two episodes which could be deemed to be "separate and distinct culpable acts." Under *Arceo,* the prosecution must elect . . . which of the two episodes upon which it is relying to establish the "conduct" element of the charged offense or the court must instruct the jury on the requirement of an unanimous verdict as to the underlying conduct.

While Mr. Maumalanga conceded that he was carrying a gun or guns at both times, Mr. Maumalanga's theory of defense was choice of evil, a defense . . . which the

prosecution must "negative" beyond a reasonable doubt. Under *Arceo*, the prosecution was required to elect the underlying conduct so that the jury may properly determine the application of the defense to the underlying conduct. Or the court must instruct the jury as to the requirement for unanimity in accepting or rejecting the defense to the same underlying conduct.

. . . Here, choice of evil was explicitly asserted as the defense as to the carrying of the guns to EM tours. In addition, although not explicitly asserted, there was sufficient evidence to support the defense of choice of evil when Mr. Maumalanga carried a gun on his trip to take his friends home. Under *Arceo*, if elected by the prosecution, the jury would be required to determine whether the defense applied to the carrying of the guns between home and office or the carrying of a gun between the office and the gas station. Here, since no election was made, the trial court is mandated by *Arceo* to instruct the jury that they must be unanimous in determining whether the prosecution had negatived the defense to the specific underlying conduct. It was plain error to have failed to do so.

Maumalanga is correct that there were two episodes that could be deemed separate and distinct culpable acts: (1) the transportation of the guns from his home to his workplace; and (2) the transportation of the guns from his workplace to the gas station. His argument nevertheless fails because the record shows that, effectively, the prosecution did make an election of the specific conduct upon which it based the charge of place to keep loaded firearm.

In its cross-examination of Maumalanga and in closing argument, the prosecution focused its development of the facts and its argument on Maumalanga's conduct in taking the loaded firearm with him when he left his workplace to take his friends home and when he stopped for gas. No attempt was made to question Maumalanga whether his firearms were loaded or enclosed in contain-ers when he transported them from his home to EM Tours. Instead, he was questioned regarding the condition of the firearm at the gas station and whether he knowingly took it with him when he departed from his place of business. Similarly, in closing argument, the prosecution stated, "Defendant told you that [the gun] was in his wa[i]st[ ]band because, remember, when he was in the car, he remembered the gun was in his wa[i]st[ ]band and he told you he pulled it out," thereby clearly focusing on Maumalanga's transportation of the firearm to the gas station. Accordingly, inasmuch as *no* effort was made to develop the facts necessary to establish a violation of HRS § 134–6 with regard to the period in which Maumalanga transported his firearms from his home to his place of business or to argue that the aforementioned act constituted a violation, we hold, on the present record, that the prosecution made an effective election, in satisfaction of the *Arceo* requirements, to base its charge of place to keep loaded firearm on Maumalanga's conduct in taking the firearm from his workplace to the gas station where the shooting incident occurred.[6]

## IV. *CONCLUSION*

For the reasons outlined above, we affirm the conviction and sentence appealed from. However, as to the elements of the choice of evils defense set forth in HRS § 703–302, we adopt Judge Acoba's analysis as the correct statement of the law. Accordingly, we hold that the elements of the choice of evils defense are limited to those enumerated by the express language of the aforementioned statute and that common law "considerations" have not been incorporated into the statutory formulation.

---

6. We reaffirm as a general proposition, however, that the prosecution and the trial courts should adhere to the *Arceo* requirements when the facts of the given case so require.