61 P.3d 514

STATE of Hawai'i, Plaintiff–Appellee,

v.

Kainoa K. JARDINE, Defendant–
Appellant.

No. 24282.

Intermediate Court of Appeals of Hawai'i.

Nov. 25, 2002.

Jon N. Ikenaga, Deputy Public Defender, State of Hawai'i, On the briefs, for defendant-appellant.

Daniel H. Shimizu, Deputy Prosecuting Attorney, City and County of Honolulu, On the briefs, for plaintiff-appellee.

WATANABE, Acting C.J., LIM, and FOLEY, JJ.

Opinion of the Court by WATANABE, J.

Defendant–Appellant Kainoa Jardine (Jardine) appeals from the judgment entered on April 20, 2001 by the Family Circuit Court for the First Circuit (the family court),[1] convicting and sentencing him, upon a jury verdict, for abuse of a family or household member, in violation of Hawaii Revised Statutes (HRS) § 709–906 (Supp.2001).

Because we conclude that (1) the family court plainly erred in giving the jury an instruction on the "choice of evils" defense that incorporated common law limitations on

1. Judge Michael D. Wilson presided over the proceedings below.

the defense that were expressly rejected by the Hawai'i Supreme Court in *State v. Maumalanga*, 90 Hawai'i 58, 976 P.2d 372 (1998); and (2) the family court's error was not harmless, we vacate the judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

At about 6:10 p.m. on the evening of February 8, 2001, Jardine was driving his mother's blue Toyota Corolla (the Corolla) on Farrington Highway, headed to a friend's house in Mā'ili. Monica N. Bradbury (Bradbury), his girlfriend of three years who was then six months pregnant with his child, was seated in the front seat of the Corolla. Shortly after the couple arrived at their destination at around 6:20 p.m., they were met by Honolulu Police Department (HPD) Officer Steven Posiulai (Officer Posiulai), who told them that HPD had received information that a male driving a car matching the Corolla's description had been seen hitting a female passenger while the car was in motion. Bradbury told Officer Posiulai that Jardine had hit her and pulled her hair. Jardine was then arrested and charged with committing the offense of abuse of a family or household member, in violation of HRS § 709–906 (Supp.2001), which states, in relevant part:

**Abuse of family or household members; penalty.** (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member or to refuse compliance with the lawful order of a police officer under subsection (4). The police, in investigating any complaint of abuse of a family or household member, upon request, may transport the abused person to a hospital or safe shelter.

For the purposes of this section, "family or household member" means spouses or reciprocal beneficiaries, former spouses or reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, and persons jointly residing or formerly residing in the same dwelling unit.

At trial, two witnesses testified for the prosecution. Bradbury testified that on the evening in question, she and Jardine were headed toward Wai'anae to meet some friends for dinner and then a softball game. They got into an argument, which turned physical when she tried to open the car door while the car was moving. According to Bradbury, she was "mad" and pretended to jump out of the car about four times. However, Jardine "tried to stop [her] from jumping out by pulling [her] hair." Bradbury insisted that Jardine did not hit her or do anything violent other than prevent her from jumping out of the car by pulling her hair and/or neck. She also testified that when "the police officers came" and asked her some questions, she told Officer Posiulai what Jardine had done but "never told him what [she] did."

Regarding a written statement form that she had signed in Officer Posiulai's presence on the night in question, Bradbury testified, in response to questioning by the deputy prosecutor, as follows:

A [Officer Posiulai] gave me a blank statement and just—he said to write out the statement. And I was gonna write it out, but he said, "Oh, you're not going to be in the right state of mind, so I'll just fill it out for you.[ ] Just sign." And so I signed it, signed the blank statement, and he just filled it out for me.

Q Okay. When you say "a blank statement," you're talking about like a form, a police officer gave you a form to fill in?

A Yeah. Yes.

Q Okay. Okay. And he wrote down what had happened and then he gave you an opportunity to read the form?

A No.

Q Okay. All right. So you're saying that he never—after you signed it you never saw that form again?

A Yes.

Upon further questioning, Bradbury admitted that she did not want to testify and that if it were up to her, the case would be dropped. Additionally, she testified that she loved Jardine, Jardine would be helping to support their baby after the baby was born, and they planned to raise the baby together.

Officer Posiulai was the next witness. He testified that when he arrived at the scene on the night in question, Bradbury was sitting in the passenger seat of the vehicle, crying and looking emotionally upset. Additionally, Bradbury had a "visible redness around her neck area." Jardine was standing about fifteen feet away from the vehicle and was "angry ... kind of irrational, upset [about] what was going on[,]" and "screaming back at [Bradbury], yelling at her." Officer Posiulai asked Bradbury what had happened and she responded that "her boyfriend hit her and pulled her hair[.]" Officer Posiulai then inquired whether Bradbury wanted to make a written statement and she said that she did. Officer Posiulai testified that at Bradbury's request, he wrote down what Bradbury told him to write. Upon completing the written statement, he asked Bradbury to read the statement, questioned her as to whether she wanted to make any changes, and when Bradbury declined to make any changes, witnessed her sign the statement. The text of Bradbury's statement, as written down by Officer Posiulai, is as follows:

On 2–8–01, at about 1810 hours, my boyfriend Kainoa JARDINE and I was arguing in his moms car (EXE 127). He then hit me and pulled my hair hard several times while he was driving. I am six months pregnant from him and I feel pain on my head and neck area. I want him arrested. I refuse medical attention.

I give Officer S. POSIULAI permission to write out my statement.

Following the conclusion of Officer Posiulai's testimony, Plaintiff Appellee State of Hawai'i (the State) rested its case. Jardine thereupon orally moved for acquittal, but the family court denied his motion.

The defense case then proceeded, with two witnesses testifying. The first defense witness was Alexandria Oniate (Oniate), a paramedic for the City and County of Honolulu. Oniate testified that she arrived at the scene at about 6:34 p.m. on February 8, 2001 and learned that Bradbury had been injured when her hair was pulled. Oniate did not observe any signs of "visible trauma" or "apparent injury" on Bradbury and noted these observations in a report she filled out.

Jardine testified on his own behalf, essentially confirming Bradbury's version of the facts at trial. According to Jardine, the inside handle of the front passenger door of the Corolla was broken; therefore, the window had to be rolled down and the car door opened from the outside. While he and Bradbury were arguing in the moving Corolla, he noticed that Bradbury was "trying to be sly and roll [the window] down" and then "she grabbed and she opened it up about a foot open and made an attempt to go out." Jardine claimed that in response to Bradbury's actions, he "just reached and grabbed not knowing that [he] grabbed her hair." Jardine explained:

I was trying to reach and pay attention to the road, not paying attention to her the whole time. I braked. The first time I braked too 'cause it surprised me 'cause it caught me off guard. So I just grabbed whatever I could grab to pull her in 'cause she's pregnant with my baby. She could get hurt herself, so I was worried.

When asked whether he had tried to stop the car after any of Bradbury's four attempts to exit the moving car, Jardine responded:

No. I thought about it though. I was thinking if I should stop. But when she was first trying to jump out, we was in a kind of remote area where there's no houses in the Ko Olina. . . .

. . . .

... After I grabbed her the first time I was thinking I should pull over. But my girlfriend is six months pregnant. I ain't going—I ain't about to leave her anywhere. Just—she doesn't know anybody in the area. I wouldn't be able to do that. So I continued on.

Jardine explained that in his mind, he had two choices: either keep driving, in which case Bradbury "could hurl herself out of the car"; or he could "pull over," in which case he was "pretty sure she would have jumped out" of the car. He also testified:

[L]ike I was saying I can't leave her anywhere. She's pregnant. I was worried about her. She was thinking really irrationally. I didn't want to have anything worse happen to her.

. . . .

... So I just was trying to get to my friend's house. And she's good friends with my friend's wife, so she wasn't about to listen to me, so I was pretty sure she would listen to my friend's wife.

After Jardine testified, the defense rested. During the settlement of jury instructions, the family court rejected a "choice of evils" jury instruction offered by defense counsel and indicated that it would give the following instruction instead:

> It is a defense to the offense charged that [Jardine's] conduct was legally justified. The law recognizes the choice of evils defense also referred to as the necessity defense. The choice of evils defense justifies [Jardine's] conduct if [Jardine] reasonably believed that compliance with the law would have resulted in greater harm to himself or another than the harm sought to be prevented by the law defining the offense charged.

> In order for the choice of evils defense to apply four conditions must be satisfied. First, [Jardine] must have reasonably believed that there was no legal alternative available to him. Second, [Jardine] must have reasonably believed that the harm sought to be prevented was imminent or immediate. Third, [Jardine's] conduct must have been reasonably designed to actually prevent the threat of greater harm. Fourth, the harm sought to be avoided must have been greater than the harm sought to be prevented by the law defining the offense charged.

> Accordingly, if the prosecution has not proved beyond a reasonable doubt that [Jardine's] conduct was not legally justified by the choice of evils defense, then you must find [Jardine] not guilty of abuse of family and household members. If the prosecution has done so, then you must find that the choice of evils defense does not apply.

Following the family court's charge to the jury, defense counsel again moved for judgment of acquittal. The motion was denied, and the jury found Jardine guilty as charged the same day.

On April 20, 2001, Jardine was sentenced to two years' probation and thirty days' incarceration. He was also ordered to undergo domestic violence/anger management intervention, parenting classes, and substance abuse assessment and treatment, as necessary. This timely appeal by Jardine followed.

## ISSUES ON APPEAL

Jardine urges us to reverse his conviction for three reasons:

(1) The trial court's "choice of evils" instruction was prejudicially erroneous because it included common law limitations on the "choice of evils" defense that were explicitly discarded by the Hawaiʻi Supreme Court in *State v. Maumalanga*, 90 Hawaiʻi 58, 976 P.2d 372 (1998), and thus placed "an additional and unauthorized burden on [Jardine]";

(2) The trial court plainly erred in failing to instruct the jury that the "choice of evils" defense applied to both Bradbury and the unborn child she was carrying or, in the alternative, for failing to instruct the jury on HRS § 703 305's defense of "[u]se of force for the protection of other persons" with respect to the unborn child; and

(3) The trial court erred in denying Jardine's motion for judgment of acquittal because the State failed to prove beyond a reasonable doubt that Jardine's use of force was not justifiable to keep Bradbury from harming herself or their unborn child.

## DISCUSSION

A. *The Choice of Evils Instruction*

HRS § 703–302 (1993) states, in relevant part:

> **Choice of Evils.** (1) Conduct which the actor believes to be necessary to avoid an imminent harm or evil to the actor or to another is justifiable provided that:

> (a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and

> (b) Neither the Code nor other law defining the offense provides excep-

tions or defenses dealing with the specific situation involved; and

(c) A legislative purpose to exclude the justification claimed does not otherwise plainly appear.

(2) When the actor was reckless or negligent in bringing about the situation requiring a choice of harms or evils or in appraising the necessity for the actor's conduct, the justification afforded by this section is unavailable in a prosecution for any offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

Pursuant to HRS § 703–300 (1993), the word "[b]elieves[,]" as used in HRS chapter 703, means "reasonably believes."

In *State v. Maumalanga*, 90 Hawai'i 58, 976 P.2d 372 (1998), the trial court gave the jury the same choice of evils instruction which the family court gave in this case. On appeal, 90 Hawai'i 96, 103–04, 976 P.2d 410, 417–18 (App.1998), this court concluded that the instruction was erroneous because the first and third conditions referenced in the instruction were derived from case law that predated the adoption of the Hawai'i Penal Code and were not incorporated into the choice of evils defense following the enactment of · HRS § 703–302. The majority of this court concluded, based on *State v. Kealoha*, 9 Haw.App. 115, 826 P.2d 884 (1992), and *State v. DeCastro*, 81 Hawai'i 147, 153, 913 P.2d 558, 564 (App.1996) (Acoba, J., concurring), that the first and third conditions outlined in the trial court's instruction were appropriate *"considerations"* for interpreting the first statutory requirement of HRS § 703–302(1)(a)—whether a defendant "reasonably believed it was *necessary* to commit a crime in order to avoid harm to himself or others." *Maumalanga*, 90 Hawai'i at 103, 976 P.2d at 417 (emphases in original). The majority also concluded, based on the factual record, that the error in the jury instruction was harmless.

In a concurring and dissenting opinion, Judge Acoba agreed with the *Maumalanga* majority that the choice of evils instruction given by the trial "was erroneous because it did not expressly set forth the statutory elements of that defense" contained in HRS

§ 703–302(1)(a). *Id.* at 107, 976 P.2d at 421. However, Judge Acoba disagreed that "a jury instruction on the choice of evils defense set forth in HRS § 703–302(1)(a) should include common-law 'considerations.'" *Id.* at 109, 976 P.2d at 423. Judge Acoba concluded that the "considerations" were clearly "additional elements that now must be satisfied by the defendant in addition to those already imposed under HRS § 703–302(1)(a)." *Id.* at 111, 976 P.2d at 425. Judge Acoba concurred, however, that the erroneous jury instruction was harmless, since no evidence had been introduced by the defendant to demonstrate that he believed it was *necessary* to carry a gun in order to avoid a robbery.

■ After granting a writ of certiorari to review this court's decision in *Maumalanga*, the supreme court adopted the analysis reflected in Judge Acoba's concurring and dissenting opinion and held that "the elements of the choice of evils defense are set forth, in their entirety, in the express language of [HRS § 703–302] and do not include additional elements from the 'common law' formulation" of the choice of evils justification defense. *Maumalanga*, 90 Hawai'i at 59, 976 P.2d at 373. The supreme court agreed, however, that the instructional error was harmless.

In this case, the family court's "choice of evils" instruction was identical to the instruction disavowed in *Maumalanga* and was thus erroneous. The issue we must decide is whether the instructional error was prejudicial to Jardine. The supreme court has stated the rule for reviewing erroneous jury instructions on appeal as follows:

Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.

Error is not to be viewed in isolation and considered purely in the abstract. It must be examined in the light of the entire proceedings and given the effect which the whole record shows it to be entitled. In that context, the real question becomes whether there is a reason-

able possibility that error may have contributed to conviction.

If there is such a reasonable possibility in a criminal case, then the error is not harmless beyond a reasonable doubt, and the judgment of conviction on which it may have been based must be set aside.

(*State v. Valentine*, 93 Hawai'i 199, 204, 998 P.2d 479, 484 (2000) (brackets, citations, and internal quotation marks omitted)).

■ Based on our review of the factual record in this case, we conclude that a "reasonable possibility" exists that the erroneous choice of evils instruction given to the jury may have contributed to Jardine's conviction. At trial, the State questioned Jardine extensively about why he did not stop the Corolla to let Bradbury out. The State also argued forcefully that Jardine was not justified in hitting Bradbury or pulling her hair since he could have stopped the Corolla to let Bradbury out or stopped Bradbury from jumping out of the car using a less hurtful method. A reasonable possibility exists, therefore, that Jardine was convicted because the jurors erroneously believed that Jardine's conduct could not be justified if (1) Jardine did not reasonably believe there was "no legal alternative" available to him to protect Bradbury than hitting Bradbury or pulling her hair, or (2) if Jardine's conduct was not "reasonably designed to actually prevent the threat of greater harm" to Bradbury.

B. *The Trial Court's Failure to Instruct the Jury That the "Choice of Evils" Defense Applied to Both Bradbury and Her Unborn Child, or Alternatively, on the Defense of "Use of Force for the Protection of Other Persons"*

Under the choice of evils defense set forth in HRS § 703–302, "[c]onduct which the actor believes to be necessary to avoid an imminent harm or evil to the actor or to *another* is justifiable provided" certain conditions are met. HRS § 703–305 (1993) further provides, in relevant part:

**Use of force for the protection of other persons.** (1) Subject to the provisions of this section and of section 703–310,[2] *the use of force* upon or toward the person of another *is justifiable to protect a third person when:*

   (a) Under the circumstances as the actor believes them to be, the person whom the actor seeks to protect would be justified in using such protective force; and

   (b) *The actor believes that the actor's intervention is necessary for the protection of the other person.*

(Emphases and footnote added.) The word "[a]nother" is defined in HRS § 701–118(8) (Supp.2001) as "any other person and includes, where relevant, the United States, this State and any of its political subdivisions, and any other state and any of its political subdivisions[.]" "Person" is defined in HRS § 701–118(7) as including "any natural person and, where relevant, a corporation or an unincorporated association[.]"

Jardine argues that the trial court's instructions were plainly and prejudicially erroneous because they did not make clear that Bradbury's unborn child was a "person" whom Jardine was justified in protecting under either HRS § 703–302 or HRS § 703–305. We disagree.

Several courts in other states with penal code provisions similar to Hawai'i's have held that unborn children are not "natural persons" who can be victims of a crime, unless

2. Hawaii Revised Statutes (HRS) § 703–310 (1993) provides as follows:

**Provisions generally applicable to justification.** (1) When the actor believes that the use of force upon or toward the person of another is necessary for any of the purposes for which such belief would establish a justification under sections 703–303 to 703–309 but the actor is reckless or negligent in having such belief or in acquiring or failing to acquire any knowledge or belief which is material to the justifiability of the actor's use of force, the justification afforded by those sections is unavailable in a prosecution for an offense for which recklessness or negligence, as the case may be, suffices to establish culpability.

(2) When the actor is justified under sections 703–303 to 703–309 in using force upon or toward the person of another but the actor recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those sections is unavailable in a prosecution for such recklessness or negligence toward innocent persons.

the legislature expressly included them within the applicable definition. In *Commonwealth v. Booth*, 564 Pa. 228, 766 A.2d 843 (2001), for example, the defendant was charged with one count of homicide by vehicle[3] and one count of homicide by vehicle while driving under the influence,[4] after he drove through a stop sign and collided with a vehicle driven by a thirty-two-week pregnant mother, whose unborn child died in the womb as a result of the blunt force trauma sustained by its mother. The trial court dismissed the charges, holding that a fetus could not be the victim of such charges since the law does not recognize a fetus as a person.

On appeal to the Pennsylvania Superior Court, a divided panel reversed. The majority acknowledged that in criminal matters, the longstanding common law rule was that only human beings "born alive" were regarded as independent persons within the meaning of the law. *Id.* at 231, 766 A.2d at 844. The majority determined, however, that based on *Amadio v. Levin*, 509 Pa. 199, 501 A.2d 1085 (1985) (the *Amadio* decision), in which the Pennsylvania Supreme Court had abolished the "born alive" rule for civil liability purposes and allowed the estate of a stillborn child to institute a wrongful death and survival action for fatal injuries suffered while in the mother's womb, the "born alive" rule must cease. *Id.* at 231–32, 766 A.2d at 844–45.

On further appeal, the Pennsylvania Supreme Court reversed the order of the superior court and reinstated the trial court's order. The supreme court noted that upon adoption of the Crimes Code, Pennsylvania became a "code jurisdiction" that no longer recognized common law crimes that had not been statutorily enacted. The supreme court declined to expand the *Amadio* decision to the criminal context, holding that to construe a viable fetus as "another person[,]" a term

defined in the Crimes Code as "a natural person[,]" would contravene the general rule favoring strict construction of penal statutes in accordance with the common and approved usage of the words of the statute and in the light most favorable to the accused. *Id.* at 234, 766 A.2d at 846. Furthermore, the supreme court stated, the expansion of *Amadio* to criminal cases would amount to the creation of a new class or category of crime, a decision best left "for the legislature because abolition of the [born alive] rule would entail a substantive change in the criminal law." *Id.* at 242, 766 A.2d at 851.

Other courts that have similarly ruled that an unborn child cannot be a victim of a crime include: *State v. Dunn*, 82 Wash.App. 122, 916 P.2d 952 (1996) (holding that the trial court properly dismissed a charge against a mother for second degree criminal mistreatment of a viable unborn child who tested positive for cocaine); and *State v. Winston*, 71 Ohio App.3d 154, 593 N.E.2d 308 (1991) (upholding the following instruction to a jury that had the effect of restricting the jury's attention to the harm to a pregnant mother, rather than to her fetus: "A person is defined as every natural person existing or present from birth. Therefore, a viable unborn fetus is not a person as defined under the laws of Ohio. A viable unborn fetus is not a person. You are instructed, however, that a viable unborn fetus is considered to be part of the mother until such time as it is born.").

■ In this case, Jardine justifies his physical abuse of Bradbury on grounds that he was protecting "another" or a third person, specifically, his unborn child. Therefore, unlike the cases discussed above in which the accused was charged with a crime against an unborn child, Jardine urges us to recognize a defense for protection of an unborn child. Since Hawaiʻi has not legislative-

---

3. The Commonwealth of Pennsylvania did not pursue its challenge to the dismissal of the homicide by vehicle count.

4. The offense of homicide by vehicle while driving under the influence was defined in section 3735(a) of the Pennsylvania Vehicle Code as follows:

(a) **Offense defined.**—Any person who unintentionally causes the death of *another person* as the result of a violation of section 3731 (relating to driving while under the influence of alcohol or controlled substance) and who is convicted of violating section 3731 is guilty of a felony of the second degree . . . .

*Commonwealth v. Booth*, 564 Pa. 228, 230–31, 766 A.2d 843, 844 (2001) (emphasis in original).

ly included unborn children within the definitions of "another" or "person"[5] for purposes of the Hawai'i Penal Code, we decline to do so. While there may be sound public policy reasons to allow a choice of evils justification defense for the protection of unborn children, the adoption of such a public policy is best left to the state legislature.

The Court of Appeals of Texas reached a similar conclusion in *Reed v. State*, 794 S.W.2d 806 (Tex.App.1990). In *Reed*, the defendants were charged with obstructing a passageway following their participation in an abortion protest. Claiming that their actions were justified because they were preventing the death of unborn children, Defendants sought to raise the defense of third persons defense, which the trial court denied. On appeal, the Court of Appeals of Texas affirmed, stating:

> Because *Tex. Penal Code Ann.* § 1.07(a)(27) defines "person" as "an individual, corporation, or association," while *§ 1.07(a)(17)* defines "individual" as "a human being who has been born and is alive," an unborn child is not at the present time under Texas law a "person" for purposes of the defense of defending third persons.

*Id.* at 810.

### C. Jardine's Motion for Judgment of Acquittal

Jardine argues that the family court erred in denying his motion for judgment of acquittal because the State failed to prove beyond a reasonable doubt that his use of force was not justifiable to keep Bradbury from harming herself or their unborn child.

In view of our holding that the defense of third persons is not available to protect an unborn child, Jardine's argument that the evidence was insufficient to negate his defense of unborn child justification is meritless. With respect to his defense of Bradbury justification, the Hawai'i Supreme Court has instructed that

> [i]n considering the sufficiency question

the evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was tried before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. "Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

*State v. Malufau*, 80 Hawai'i 126, 133, 906 P.2d 612, 619 (1995) (quoting *State v. Okumura*, 78 Hawai'i 383, 403, 894 P.2d 80, 100 (1995)).

■ Reviewing the evidence in the record according to the foregoing standard, we conclude that there was sufficient evidence adduced at trial to negate Jardine's defense. Therefore, the family court did not err in denying Jardine's motion for judgment of acquittal.

## CONCLUSION

For the foregoing reasons, we vacate the April 20, 2001 judgment of the family court and remand this case for further proceedings consistent with this opinion.

---

**5.** The closest Hawai'i case appears to be *State v. LeVasseur*, 1 Haw.App. 19, 613 P.2d 1328 (1980), in which a just-fired maintenance worker at a university marine laboratory released dolphins from the laboratory into the sea and attempted to justify his conduct using the "choice of evils" defense. This court held that dolphins were not "natural persons" within the meaning of HRS § 703–118(7). *Id.* at 25, 613 P.2d 1328.